E-filing

1   RAYMOND E. WILLIS, ESQ.  (Ca Bar # 117337)
    Law Offices of Raymond E. Willis
2   P.O. Box 70214
    Oakland, CA  94612
3   Telephone:  (510) 451-1113
    Fax: (510) 451-1472
4

5   Attorneys for Plaintiff
    Dorian W. Gray
6

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  DORIAN W. GRAY,                     ) Case No.: C10-00483
                                        )
12              Plaintiff,              ) **ORIGINAL COMPLAINT FOR:**
                                        )
13          v.                          ) 1.  **VIOLATION OF REAL ESTATE**
                                        )     **SETTLEMENT PROCEDURES ACT**
14  CENTRAL MORTGAGE COMPANY            )     **(12 USC § 2605)**
    dba CENTRAL MORTGAGE LOAN           )
15  SERVICING COMPANY, MORTGAGE         ) 2.  **INJUNCTIVE RELIEF**
    ELECTRONIC REGISTRATION SYS-        )
16  TEMS, INC., PATRIOT FINANCIAL       )     **DEMAND FOR JURY TRIAL**
    CORPORATION, MTC FINANCIAL INC.     )
17  dba TRUSTEE CORPS, and ALVIN        )
    BROWN,                              )
18                                      )
                Defendants.             )
19  _____ )

20

21

22

23

24

25

26

27

28

Plaintiff Dorian Gray, an individual, (hereinafter "Plaintiff"), by and through counsel, for his Complaint against Defendants alleges as follows:

## INTRODUCTION

1. At its core, this case is about predatory lending practices, which have caused Plaintiff to lose all of the equity in his home and have forced him into bankruptcy. The Defendants in this case have violated a panoply of state and federal lending laws and consumer protection and fair debt reporting laws. Plaintiff, by virtue of his complaint, seeks judicial redress for what has heretofore been a free-for-all.

2. When Defendants qualified Plaintiff for a $638,910.00 loan ("Subject Loan") and took a secured interest in his home, they failed to abide by the most import underwriting guideline governing whether a loan should issue - determining if Plaintiff had sufficient income to pay the monthly payments. Defendant Alvin Brown submitted a loan application on Plaintiff's behalf which, among other things, had fraudulently prepared documentation with Plaintiff's forged signature stating false monthly income in the amount of $28,000.00. Plaintiff provided Defendants with tax returns, which showed what his actual income was, and that it was not enough to make monthly payments. But Defendants failed to act on the basis of the information provided by Plaintiff. Instead, on information and belief, they qualified Plaintiff for the Subject Loan based exclusively on the fraudulently prepared documents which were concealed from Plaintiff. The bottom line here was, Defendants, being lenders and mortgage brokers, or purported mortgage brokers, knew that the Plaintiff could not pay for the Subject Loan was to continue to strip equity out of his home through repeated refinancing.

3. Defendant's actions were classic predatory lending practices. The United States Office of the Comptroller of Currency has opined on what it characterized as a touchstone of predatory lending, *i.e.*, where the lender fails to determine whether a borrower can reasonably be expected to repay the loan from resources other than the collateral in the home. O.C.C. Policy Letter AL2003-2. Elaborating, the Office of the Comptroller noted that, when a lender relies upon the liquidation value of the borrower's collateral, it commits classic acts of predatory lending. The Defendants in this case could not possibly have relied upon anything other than the

1    liquidation value of the collateral in Plaintiff's home as the basis for granting him the loan at
2    issue in this case.

3         4. Specifically, one of the key consumer protections under RESPA is the ability
4    of a borrower to send a Qualified Written Request ("QWR") to its loan servicer asking for an
5    accounting of all money owing, late fees charged, etc. When the borrower sends a QWR to its
6    lender, the lender has 20 days to acknowledge receipt of the QWR and 60 days to provide a
7    substantive response. On November 5, 2009, Plaintiff sent a QWR to Defendant Central
8    Mortgage. On December 4, 2009, Plaintiff sent a second QWR to Defendant Central Mortgage.
9    Notably, Plaintiff requested documentation reflecting the identity of the true owner and holder of
10   the Note and mortgage as set forth below. To date, Defendant Central Mortgage has failed to
11   respond to the QWR sent on either November 5, 2009 or December 4, 2009.

12        5. On information and belief, Plaintiff's loan was securitized. *See*, *In Re Hwang*,
13   396 B.R. 757, 767 (Bankr. C.D. Cal. 2008)(discussing securitization and determining who the
14   real party in interest is). As is typical when a loan is securitized, the funds Plaintiff borrowed did
15   not come from any source that Plaintiff could readily identify. Instead, the money for the Subject
16   Loan came from "investors," the identity of whom is concealed by the named Defendants.

17        6. Plaintiff cannot file a complete complaint, and in particular include all
18   interested parties and defendants, because the named Defendants routinely conceal this informa-
19   tion, and maintain it tightly within their control.

20        7. The parties that have in interest in this matter, and who are potential defen-
21   dants include, but are not necessarily limited to various servicers, master servicers, subcontrac-
22   tors, securities administrators, custodians, and others, which Plaintiff cannot include at this time
23   because the named Defendants have concealed this information from him. On information and
24   belief, Plaintiff's loan is part of a Special Purpose Vehicle ("SPV"), which issues securities to
25   certificate holders.

26        8. On information and belief, the Defendants have no authority to modify the loan
27   under the terms governing the servicing of loans within an SPV. In many cases, the agent or
28   trustee of the SPV cannot modify the loan without the consent of the certificate holders.

COMPLAINT - Page 3

1           9. The SPV and certificate holders are necessary parties. The Defendants,

2  however, are the only parties that have access to the information identifying the SPV and

3  certificate holders. Defendants are required by RESPA to reveal the identity of the SPV and the

4  certificate holders. Rather than comply with their legal duty, Defendants have, instead, intention-

5  ally conceal this information.

6           10. One thing that was evident, however, is that Defendants violated TILA during

7  the closing phase of the Subject Loan. Specifically, they failed to provide Plaintiff with the

8  necessary TILA disclosures prior to the closing date of the loan. This failure is particularly

9  critical in this case because the TILA disclosure is one of the simplest ways that a borrower can

10  see what the payments will be over the life of the loan without having to read through the entire

11  Promissory Note, which is typically lengthy and complex. If the Defendants had provided

12  Plaintiff with the TILA disclosures three days prior to closing the Subject Loan, he would have

13  been able to see what his monthly payments would be over the life of the loan. Indeed, one of

14  the purposes of TILA is to provide borrowers with meaningful disclosures to enable them to

15  become informed about the cost of loans and to be able to comparison shop before they sign the

16  final loan documents.

17          11. These Defendants have violated RESPA and TILA. But that is not the whole

18  story. Turning back to the inception of the Subject Loan, the remaining Defendants, when

19  lending money to Plaintiff knew, or should have known, that Plaintiff would not be able to pay

20  the Subject Loan. In his dealings with the Defendant Alvin Brown, the broker who sold Plaintiff

21  the Subject Loan, Plaintiff had provided sufficient information to verify Plaintiff's income and

22  ability, or inability, to pay the Subject Loan.

23          12. To process the Subject Loan, Defendants, among other things, created false

24  documents with a forged signature of Plaintiff, claiming an income of $28,000.00 per month.

25  The false documents Defendants used to process the Subject Loan also contained a company

26  letterhead falsely claiming that it was created for Plaintiff's company. Defendants also used a

27  letter from an accountant that falsely claimed that he had done Plaintiff's taxes for seven years,

28  where Plaintiff had never had this alleged accountant perform any services on his behalf.

COMPLAINT - Page 4

1    13. The confluence of events described above has resulted in Plaintiff's filing

2 bankruptcy. Defendants have unlawfully initiated foreclosure proceedings on Plaintiff's home.

3 This egregious interfusion of predatory lending and wrongful foreclosure, have resulted in

4 horrific and devastating financial losses for Plaintiff. This action is to seek redress and restore to

5 Plaintiff the financial security he had prior to this predatory assault on his finances.

6    14. Cal. Civil Code § 2923.6 states:

7
     (a)   The Legislature finds and declares that any duty servicers may have to
8          maximize net present value under their pooling and servicing agreements is
           owed to all parties in a loan pool, not to any particular parties, and that a
9          servicer acts in the best interests of all parties if it agrees to or implements a
           loan modification or workout plan for which both of the following apply:
10
           (1)   The loan is in payment default, or payment default is reasonably
11               foreseeable.

12         (2)   Anticipated recovery under the loan modification or workout plan
                 exceeds the anticipated recovery through foreclosure on a net
13               present value basis.

14   (b)   It is the intent of the Legislature that the mortgagee, beneficiary, or autho-
           rized agent offer the borrower a loan modification or workout plan if such a
15         modification or plan is consistent with its contractual or other authority.

16   ( c)  This section shall remain in effect only until January 1, 2013, and as of that
           date is repealed, unless a later enacted statute, that is enacted before January
17         1, 2013, deletes or extends that date.

18         15. On information and belief a loan modification will often result in a recovery

19 on a net present value basis, greater than a foreclosure, especially if there is a principal reduction

20 in the loan and this is true for the plaintiff.

21                          **JURISDICTION AND VENUE**

22         16. This Court has subject matter jurisdiction based upon federal question under

23 12 U.S.C. § 2614. This is an action asserting violations of federal statutes commonly known as,

24 RESPA.

25         17. After Plaintiff receives the information required to be provided to him, he

26 intends to allege violations of statutes commonly known as TILA, Regulation Z, the Fair Credit

27 Reporting Act, and the Fair Debt Collection practices act, with additional claims under other

28 federal laws and California law and the court will have subject matter jurisdiction based upon

1  federal question under 28 U.S.C. § 1331 and 1367, and 15 U.S.C. §1692, and 15 U.S.C. §

2  1640(e).

3          18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that a

4  substantial part, of the events giving rise to the claims asserted herein occurred in this judicial

5  district.

6          19. This Court has personal jurisdiction over the parties as all Defendants engage

7  in business within the State of California, County of Contra Costa, and thus have sufficient

8  contacts.

9          20. This Court has jurisdiction over state claims by virtue of pendent jurisdiction.

10                                    **DEFINITIONS**

11          21. As used in this Complaint:

12  a.      The term "RESPA" means the Real Estate Settlement Procedures Act, 12 U.S.C. §

13          2605 *et seq.*

14                                      **PARTIES**

15          22. Plaintiff Dorian Gray, an individual, maintains his primary residence at 5753

16  Oakmont Dr., Richmond, CA 94806 ("Subject Residence").

17          23. Plaintiff is informed and believes, and thereon alleges, that at all times

18  mentioned herein, Defendant Central Mortgage Company dba Central Mortgage Loan Servicing

19  Company ("Central Mortgage") was an Arkansas corporation authorized to conduct business in

20  the State of California.

21          24. Plaintiffs are informed and believe, and thereon allege that Mortgage

22  Electronic Registration System Inc., ("MERS") is a Delaware corporation engaged in the

23  business of holding title to mortgages. MERS is registered to do business in California and it

24  does business in California as evidenced by assignment of the deed of trust to it.

25          25. MERS has no beneficial interest or rights to enforce the terms of the

26  promissory note pursuant to the terms of California Commercial Code including but not limited

27  to California Commercial Code §§ 1201 subdivision (21), 3301, and 3309 because it is not in

28  possession of the promissory note and has no authority to conduct any non-judicial foreclosure

COMPLAINT - Page 6

1  sale.

2       26. Plaintiff is informed and believes, and thereon alleges, that at all times

3  mentioned herein, Defendant Patriot Financial Corporation ("Patriot Financial") was a California

4  Corporation authorized to conduct business in the State of California.

5       27. Plaintiff is informed and believes, and thereon alleges, that at all times

6  mentioned herein, Defendant Alvin Brown ("Brown") was a broker licensed by the California

7  Department of Real Estate and was a designated officer of Patriot Financial.

8       28. Plaintiff is informed and believes, and thereon alleges, that at all times

9  mentioned herein, Defendant MTC Financial Inc., dba Trustee Corps. ("Trustee Corps") was a

10 California corporation authorized to conduct business in the State of California and was a

11 servicer of the subject loan after it went into default.

12      29. Plaintiff is informed and believes, and thereon alleges, that at all pertinent

13 times each of the Defendants was the agent of each of the remaining Defendants, and/or acted

14 with their consent, ratification and authorization, and in doing the acts alleged herein, each of the

15 Defendants acted in such capacity with respect to the remaining Defendants.

16      30. In the course of, servicing the Subject Loan Defendants have violated

17 RESPA, and failed to provide material information required to be disclosed under RESPA, and

18 California law. Until Plaintiff obtains the information he is entitled to, he cannot file a complaint

19 that will include necessary parties and include other important information. Once Plaintiff

20 obtains this information he will seek to amend this complaint or dismiss it without prejudice and

21 file a new action. In the mean time he temporarily seeks relief only for violations of RESPA and

22 for temporary injunctive relief to stop the wrongful foreclosure.

23                          **FACTUAL ALLEGATIONS**

24      31. The core of this action arises out of a loan, provided by Defendants and

25 secured by Plaintiff's home, and the subsequent foreclosure related activity on the Subject

26 Residence.

27      32. The violations alleged herein began prior to Plaintiff entering into the Subject

28 Loan. Before the closing of the Subject Loan, Defendants were supposed to have provided

COMPLAINT - Page 7

1    Plaintiff with the TILA disclosures mandated by Federal Law. A TILA disclosure is a straight-
2    forward disclosure of the payment terms of a loan over the life of the loan. Federal Law
3    recognizes the need for such disclosures because most borrowers do not have the legal and
4    financial sophistication to read promissory notes. Defendants violated TILA by withholding the
5    TILA disclosures at the pre-closing phase of the Subject Loan, however, that will be included in
6    a cause of action in an amended complaint.

7          33. On or about January 5, 2006, Plaintiff signed a promissory note (the
8    "Promissory Note") for the Subject Loan resulting in initial payments of $2,808.78 per month, as
9    reflected in Exhibit "1" attached hereto. At that time, Defendants told Plaintiff that he was
10   getting the best loan he could get and promised that they were acting in Plaintiff's, and only
11   Plaintiff's, best interest.

12         34. During the closing, Defendants acquired the Subject Loan, evidenced by a
13   promissory note for $638,910.00, secured by the Subject Residence from Plaintiff. The terms of
14   the Subject Loan were memorialized in a promissory note. The deed of trust identified Defen-
15   dant Downey Savings as the lender. In agreeing to sign the loan documents and to encumber the
16   Subject Property with a deed of trust, Plaintiff relied upon promises made by Defendants, just as
17   Defendants had intended.

18         35. The Subject Loan falls within the protections accorded to consumers by the
19   Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. and its implementing regulations, 12
20   C.F.R. Part 226 "Reg. Z".

21         36. The compliance requirements of TILA are triggered at the time the loan
22   application is made. Within certain times after the loan application is submitted, Defendants were
23   required to perform certain acts. They, however, failed to do so. For example, Defendants were
24   required to provide Plaintiff with certain disclosures pursuant to TILA. Under TILA and
25   Regulation Z, Defendants were required to clearly and conspicuously disclose the amount
26   financed and the finance charge, among other things, in connection with the Subject Loan.

27         37. The TILA disclosures are supposed to be segregated from other documents
28   and any unrelated information per Reg. Z § 226.17(a)(1).

COMPLAINT - Page 8

1    38. TILA disclosures are required to be provided "before consummation" of the

2    loan. (Reg. Z § 226.179b). TILA disclosures are one of the most straight-forward pieces of loan

3    documentation. They provide the borrower with a breakdown of monthly payments over the life

4    of the loan. One of the purposes of TILA disclosures is to ensure that borrowers understand the

5    loan they are acquiring, and secondarily to allow borrowers to comparison shop before entering

6    into the loan.

7    39. On November 21, 2006, an Assignment of Deed of Trust was recorded

8    assigning the Subject Loan to MERS as original lender and nominee for Central Mortgage.

9    (Exhibit "2").

10   40. On April 3, 2009, a Notice of Default ("NOD") in connection with the

11   Subject Property was filed and served on Plaintiff claiming a default in the amount of \$37,468.33

12   as of Feb. 10, 2009. (Exhibit "3").

13   41. On October 15, 2009, an Assignment of the Deed of Trust was by MERS.

14   (Exhibit "4").

15   42. On October 15. 2009, a Substitution of Trustee was recorded appointing

16   Trustee Corps as sub-servicer and trustee. (Exhibit "5").

17   43. On October 15, 2009, a Notice of Trustee Sale ("NOS") in connection with

18   the Subject Property was recorded and served on Plaintiff for default under the above-referenced

19   deed of trust, again based on alleged defaults not owed on the loan of \$725,766.41. (Exhibit "6").

20   44. On or about November 5, 2009, Plaintiff served a Qualified Written Request

21   under RESPA and TILA requesting an accounting and also including a request for a copy of the

22   note with any modifications thereto, attached hereto as Exhibit "7." Plaintiff sent a second QWR

23   on December 4, 2009, attached hereto as Exhibit "8."

24   45. According to RESPA, when a borrower submits a QWR, the lender has 20

25   days to acknowledge receipt of the QWR and, within 60 days, to perform an adequate investiga-

26   tion, provide the requested information, make any corrections to the borrower's account,

27   including crediting any erroneous late charges or penalties, provide written notification of these

28   credits, provide a written explanation of why the account is correct, and include the name and

COMPLAINT - Page 9

1  telephone number of the service representative.

2  46. The TILA documents for the Subject Loan were not provided to Plaintiff
3  three days in advance of the closing. Rather, documents alleged to be for the Subject Loan were
4  provided on the day the loan closed, January 5, 2006. The loan application, TILA disclosure,
5  Good Faith Estimate, and other documents that were given to Plaintiff show that they were
6  signed the same day as the loan was consummated. Not only that, but, all of the documents
7  provided to Plaintiff at the closing were signed in one large stack at the same time, and therefore
8  not properly segregated.

9  47. Some of the actual documents of the Subject Loan we not provided to
10  Plaintiff even at the closing. Some of the actual documents of the Subject Loan do not contain
11  Plaintiff's signature. Said documents have a forged signature of Plaintiff. Other documents not
12  presented to Plaintiff at the closing contained false and fraudulent information, among other
13  things, falsely claiming that Plaintiff has an income of $28,000.00 per month.

14  48. A representative of Defendant Patriot Financial had started the loan process
15  for the Subject Loan with Plaintiff by a telephone call. At no time during the loan process did
16  any representative of Defendant Patriot Financial subsequently contact Plaintiff for any addi-
17  tional information or documentation.

18  49. Defendant Central Mortgage failed to acknowledge receipt of Plaintiff's
19  QWR within 20 days, each of which constitutes a violation of RESPA.

20  50. One of the pieces of information Plaintiff sought in his QWR is the true
21  owner and holder of the Note.

22  51. On or about January 11, 2010, Plaintiff through his attorney sent Defendant
23  Central Mortgage a rescission notice. A copy of the notice is annexed hereto as Exhibit "9."

24  52. By letter, dated January 22, 2010, Defendant Central Mortgage stated it did
25  not rescind the loan, and considers the loan to remain in effect.

26  53. The foreclosure sale date has now been scheduled for Thursday, February 11,
27  2010, at 1:30 PM.

28  54. On information and belief, Plaintiff alleges that Trustee Corps. systematically

COMPLAINT - Page 10

conspires with Central Mortgage to foreclose unlawfully when it knows or should know that Central Mortgage is unwilling or unable to accurately set forth the amounts in default and knows or should know that no named Defendant is the real party in interest to foreclose, and fraudulently conceals this information.

55. On information and belief, Plaintiff alleges that Defendants, in committing the acts alleged in this Complaint, are engaging in a pattern and practice of unlawful activity. In pursuing the non-judicial foreclosure, Defendants represented that they have the right to payment under the Note in connection with the Subject Loan, payment of which was secured by a deed of trust. Whereas, in fact, the Defendants were not in possession of the Note and they were neither holders of the Note or non-holders of the Note entitled to payment, as those terms are used in California Commercial Code § 3301 and 3309, and therefore they were proceeding to foreclose without rights under the law.

56. The final stage of a foreclosure proceeding is a sale of the property through a public auction at which the current beneficial owner of the right to foreclose is the only lawful party who can provide instructions to the trustee on the amount of money to accept at the sale or to "credit bid" up to the amount owed on the loan. Mortgage Electronic Registration Systems, Inc. is the named "nominal" beneficiary, but, is not the beneficiary entitled to foreclose. In fact, none of the Defendants, or any of their authorized agents, who have played a part in the non-judicial foreclosure proceedings is entitled to receive payment from the loan proceeds, or the Subject Residence. The assertion made in the foreclosure proceedings that the beneficiary named on the trust deed is entitled to foreclose and the notices of default and trustee sale based on amounts not properly owing are acts of fraud or deceit within the meaning of Cal. Civ. Code § 2924h.

1

## FIRST CAUSE OF ACTION

2

### VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

3

### 12 U.S.C. § 2605 *et seq.*

4

### (Against Defendant Central Mortgage)

5        57.  Plaintiff re-alleges and incorporates herein by reference, each and every

6    allegation contained above as though set forth in full.

7        58.  The Subject Loan is a mortgage loan subject to the provisions of the Real

8    Estate Settlement Procedures Act set forth at 12 U.S.C. § 2605 *et seq.*

9        59.  A violation of RESPA is also made unlawful under California state law by

10   Financial Code section 50505, which states, "Any person who violates any provision of [RESPA]

11   or any regulation promulgated hereunder, violates this division [California Residential Mortgage

12   Lending Act]."

13       60.  On or about November 5, 2009, Plaintiff sent defendant Central Mortgage the

14   QWR as defined under RESPA, 12 U.S.C. § 2605(e)(1)(B), requesting, among other things, all

15   documents evidencing the identity of the owner and holder of the Note and mortgage in connec-

16   tion with the Subject Property, including the complete chain of title to ownership of the Note and

17   mortgage. A true and correct copy of Plaintiff's supplemental Qualified Written Request, dated

18   November 5, 2009 is annexed hereto as Exhibit "4".

19       61.  To date, Defendant Central Mortgage has failed to acknowledge receipt of the

20   QWR sent November 5, 2009 or respond to the request.

21       62.  On or about December 4, 2009, Plaintiff sent defendant Central Mortgage the

22   QWR as defined under RESPA, 12 U.S.C. § 2605(e)(1)(B), requesting, among other things, all

23   documents evidencing the identity of the owner and holder of the Note and mortgage in connec-

24   tion with the Subject Property, including the complete chain of title to ownership of the Note and

25   mortgage. A true and correct copy of Plaintiff's supplemental Qualified Written Request, dated

26   November 5, 2009 is annexed hereto as Exhibit "5."

27       63.  To date, Defendant Central Mortgage has failed to acknowledge receipt of the

28   QWR sent on December 4, 2009 or respond to the request.

1         64. Defendants Central Mortgage violated RESPA by, among others, failing to

2   provide a Servicing Statement as set forth in 12 U.S.C. § 2605(a); Reg. X § 3500.21(b); and did

3   not properly respond to Plaintiff's Qualified Written Request as set forth in 12 U.S.C. § 2605(e)

4   and Reg. X § 3500.21(e); and by failing to provide the information requested by Plaintiff.

5         65. Plaintiff is informed and believes, and thereon alleges, that Defendants named

6   herein, have engaged in a pattern or practice of non-compliance with the requirements of the

7   mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605.

8         66. Defendant Central Mortgage violated RESPA 12 U.S.C. § 2605(e)(1)(A), by

9   failing to provide a written response acknowledging receipt of the Plaintiff's Qualified Written

10  Requests no later than 20 days after receipt of the request.

11        67. Defendant Central Mortgage violated RESPA, 12 U.S.C. § 2605(e)(2) by

12  refusing to cease its collection efforts and foreclosure proceedings after receiving the Plaintiff's

13  qualified written request by continuing to threaten and pursue foreclosure.

14        68. Upon information and belief, Defendant Central Mortgage violated RESPA,

15  12 U.S.C. § 2605(e)(3), by providing information to consumer reporting agencies regarding

16  overdue payments allegedly owed by the Plaintiff that were related to her qualified written

17  request.

18        69. Defendant named herein has engaged in a pattern or practice of non-compli-

19  ance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12

20  U.S.C. § 2605 and have and continue to conceal information.

21        70. As set forth above, Defendants violated numerous federal and state laws.

22  However, until Plaintiff can obtain basic information such as who the current holder of the

23  promissory note is, which information is in the exclusive control of Defendants, he is unable to

24  plead a complete case which even includes all parties who may have in interest in the legal

25  action.

26        71. Therefore plaintiff had no choice but to file this complaint for damages and

27  injunctive relief based on RESPA and will file an amended complaint when and if Defendants

28  stop concealing necessary information.

1    72. As a direct and proximate result of defendant Central Mortgage failure to

2  comply with RESPA, as set forth herein, Plaintiff has suffered and continues to suffer damages

3  and costs of suit. Plaintiff is entitled to recover statutory damages, actual damages in an amount

4  to be determined at trial, costs and reasonable attorneys' fees incurred herein.

5

6                              **SECOND CAUSE OF ACTION**

7                                  **Injunctive Relief**

8                   **(Against Defendants Central Mortgage and Trustee Corps)**

9    73. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

10  though fully set forth herein.

11   74. Defendants have commenced a foreclosure action under the Note and have

12  scheduled a non-judicial sale. Said sale will cause Plaintiff great and irreparable injury in that

13  real property is unique.

14   75. The wrongful conduct of Defendants, unless restrained and enjoined by an

15  order of the court, will cause great and irreparable harm to him. Plaintiff will not have the bene-

16  ficial use and enjoyment of the property and will lose his home

17   76. Plaintiff has no other plain, speedy or adequate remedy and the injunctive

18  relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to

19  Plaintiff. Plaintiff has suffered and will continue to suffer in the future unless Defendants'

20  wrongful conduct is restrained and enjoined because real property is inherently unique and it is

21  and will be impossible for Plaintiff to determine the precise amount of damage he will suffer.

22             **WHEREFORE**, Plaintiff prays for relief as set forth below.

23                                    **PRAYER**

24             **WHEREFORE**, Plaintiff prays for judgment and order against Defendants,

25  inclusive, as follows:

26   1. For statutory damages in the amount of $1,000.00 per violation pursuant to 12

27  U.S.C. § 2605(f) and Reg. X 24 C.F.R. § 3500.21(f);

28   2. For attorney's fees and court costs;

COMPLAINT - Page 14

1          3. For a temporary restraining order, preliminary and permanent injunction

2   requiring Defendants to provide the information requested in the QWR served on them and in

3   particular the information Defendants have about any assignments of the Note and specifically

4   the identity and assignment of the Note to any SPV;

5          4. For a temporary restraining order, preliminary and permanent injunction

6   requiring Defendants to cease taking any and all action to foreclose;

7          5. For leave to amend this complaint after the information requested is provided;

8          6. For such other and further relief as the court deems just and proper.

9

10                                                      Respectfully submitted,

11   Dated: 2/2/10

12

13                                               By: _____

14

15

16

17

18

19

20

21

22                        .

23

24

25

26

27

28

1   **DEMAND FOR JURY TRIAL**

2   Plaintiff Dorian W. Gray demands a trial by jury.

3

4   Dated: 2/2/10                        **LEGAL OBJECTIVE**

5

6

7                                        By: _____
                                         Raymond E. Willis
8                                        Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT - Page 16

# Exhibit 1

# ADJUSTABLE RATE NOTE

(12-Month Treasury Average Index)
(Payment and Rate Caps)

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY
PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE
GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE
LIMIT STATED IN THIS NOTE.

| January 4, 2006 | CONCORD | CA |
|---|---|---|
| [Date] | [City] | [State] |

5753 OAKMONT DRIVE, RICHMOND, CA 94806

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 638,910.00         (this amount is
called "Principal"), plus interest, to the order of the Lender. The Lender is
Downey Savings and Loan Association, F.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Until the first day
of the calendar month that immediately precedes the first payment date set forth in Section 3(A) below, I will pay interest
at a yearly rate of 6.568 %. Thereafter, until the first Interest Change Date (as defined in Section 2(B) below), I will pay
interest at a yearly rate of 2.000 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in
Section 7(B) of this Note.

### (B) Interest Change Dates

The interest rate I will pay may change on the first day of    **March**  ,   **2006**  ,
and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Change
Date." The new rate of interest will become effective on each Interest Change Date.

### (C) Interest Rate Limit

My interest rate will never be greater than        **10.950**        %.

### (D) Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the
Twelve-Month Average, determined as set forth below, of the monthly yields ("Monthly Yields") on actively traded
United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board
in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)." The Twelve-Month Average is
determined by adding together the Monthly Yields for the most recent twelve months and dividing by 12.

The most recent Index figure available as of 15 days before each Interest Change Date is called the "Current
Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable
information. The Note Holder will give me notice of this choice.

### (E) Calculation of Interest Rate Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding
**two and ninety-five hundredth(s)**
                   percentage point(s) (2.950     %)
to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this addition will be my new
interest rate until the next Interest Change Date.

Case 3:10-cv-00483-RS Document 1 Filed 02/03/10 Page 19 of 47

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **March 1 2006** . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before Principal. If, on **February 1, 2036** , I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 6060, 3501 Jamboree Rd, Newport Beach, CA 92658-6060**
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be U.S. $ **2,361.54** . This amount may change.

### (C) Monthly Payment Changes

My monthly payment may change as required by Section 3(D) below beginning on the first day of **March 2007** , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

### (D) Calculation of Monthly Payment Changes

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change Date.

### (E) Additions to My Unpaid Principal

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. The Note Holder also will add interest on the amount of this difference to my unpaid Principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above.

### (F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to one hundred **ten** percent ( **110** %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that maximum due to the limited payments and interest rate increases. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date at my current interest rate in substantially equal payments.

### (G) Required Full Payment

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

## 4. NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.



1141N2.UFF (01/12/2001) 7970 VC     Page 2 of 4     Initials     1/01

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          Fifteen (15)
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
                              5.000                              % of my overdue payment of Principal and interest.  I
will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
DORIAN W GRAY          -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

[Sign Original Only]

## RIDER TO PROMISSORY NOTE AND SECURITY INSTRUMENT

Loan Number: ███████                    Date: **January 4, 2006**

Property Address: **5753 OAKMONT DRIVE, RICHMOND, CA  94806**

This Rider is hereby incorporated into that certain deed of trust/mortgage (Security Instrument), and that certain promissory note (Note), both dated the same date as this Rider executed by Borrower in favor of Downey Savings and Loan Association, F.A. (Lender or Note Holder). Anyone who takes the Note by transfer and who is entitled to receive payments under the Note is also called the Note Holder. All capitalized terms used but not defined in this Rider shall have the same meaning as set forth in the Note and Security Instrument. To the extent that any provisions in this Rider are inconsistent with the Security Instrument and/or the Note, this Rider shall prevail. This Rider is secured by the Security Instrument.

If the Federal Home Loan Mortgage Corporation (FHLMC), the Federal National Mortgage Association (FNMA) or any other investor buys all or some of Lender's rights under the Security Instrument and the Note, the provisions of this Rider, may, at the investor's discretion, no longer have any force or effect. If thereafter FHLMC or FNMA or any other owner should retransfer the Security Instrument and Note to Lender or Lender's successor in interest, then this Rider shall thereupon be automatically reinstated, without any additional writing or document.

### 1. LATE CHARGES and ACCRUED INTEREST.

If any installment is not received by Note Holder within fifteen (15) days after its due date, Borrower shall pay Note Holder a late charge in an amount equal to six percent (6.000%) of the installment due that is applicable to the payment of principal and interest, or $5.00, whichever is greater. If the fifteen day period ends on a weekend or a holiday, the period is extended to the next business day. Borrower acknowledges that it would be difficult and impractical to fix Note Holder's actual damages arising out of any late payment and that the foregoing late payment charge is a reasonable estimate of the same and shall be presumed to be the actual amount. The provisions of this paragraph shall not limit Note Holder's right, under the Security Instrument or otherwise, to compel prompt performance under the Note. Upon default, accrued and unpaid interest shall further bear interest at the then applicable interest rate until paid.

If Borrower is assessed a late charge and sufficient funds are not available in Borrower's checking account when Lender attempts to debit Borrower's loan payment from Borrower's designated checking account, a "returned item charge" will be assessed in addition to the late charge.

### 2. INTEREST ON PAST DUE SUMS.

If any sum due under the Note is not paid in accordance with the terms of the Note, including accumulated interest, then the sum(s) not paid shall bear interest at the same rate as the principal, or at the maximum rate allowed by law, whichever is less.

1D107-1.UFF (10/24/05) CR30003 RG

## 3. NOTE HOLDER'S TREATMENT OF PAYMENTS.

Except as otherwise required by law, Note Holder may apply all payments accepted by Note Holder to any outstanding obligations of Borrower under the Loan Documents in any order or priority Note Holder elects in its sole and absolute discretion. Note Holder may disregard any designation or notation by Borrower (or anyone acting on Borrower's behalf) as to how a payment is to be applied by Note Holder. If Note Holder elects not to accept a payment as permitted under Section 1 of the Security Instrument, Note Holder may return the payment to Borrower regardless of who tendered payment, and in such event, Note Holder shall not have any liability to Borrower or any third party as a result thereof. Borrower shall indemnify, defend, protect and hold Note Holder harmless, from and against all claims, damages, expenses, losses and liabilities, in whatever form, suffered or incurred by Note Holder as a result of Note Holder's return of a payment to Borrower.

## 4. EVENTS OF DEFAULT; REMEDIES.

The following shall constitute additional events of default under the Security Instrument:

(A)   Any person's attempt to reconvey Note Holder's interest in the Property without Note Holder's prior written consent;

(B)   Any person's attempt to have the Note, Security Instrument, this Rider or any of the other Loan Documents declared invalid or unenforceable;

(C)   Failure to pay when due any sum due under any of the Loan Documents;

(D)   Any default under any provision of the Security Instrument; or

(E)   Borrower default under any other deed of trust or other instrument secured by the Property.

Note Holder may use in-house counsel or retain outside lawyers to analyze and respond to any event of default, and Note Holder may charge Borrower reasonable attorneys' fees and costs for such analysis and response. Note Holder may add these legal expenses to the Note and/or demand immediate reimbursement from Borrower. Borrower's failure to promptly reimburse Note Holder shall also constitute an event of default under the Security Instrument.

Upon the occurrence of any events of default, all sums secured by the Security Instrument (including all of Note Holder's attorneys' fees and costs) shall at once become due and payable at the option of Note Holder with or without prior notice by Note Holder and regardless of any prior forbearance. In such event Note Holder, at its option, may then or thereafter deliver to the Trustee a written declaration of default and demand to sell the Property and shall cause to be filed of record a written notice of default and election to cause the Property to be sold. Note Holder shall also deposit with the Trustee the Security Instrument and any notes and all documents evidencing expenditures secured thereby. After the lapse of such time as then may be required by law following recordation of such notice of default, and notice of sale having been given as then required by law, the Trustee, without demand on Borrower, shall sell the Property at the time and place specified by such Trustee in such notice of sale, or at the time to which such noticed sale has been duly postponed, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale, except that Note Holder may credit bid at the sale to the extent of the amount owing under the Loan Documents, including the Trustee's fee and expenses. The Trustee may sell the Property as a whole or in separate parcels if there is more than one parcel, subject to such rights as Borrower may have by law to direct the manner or order of sale, or by such other manner of sale which is authorized by law. The Trustee may postpone the sale of all or any portion of the Property by public declaration made by the Trustee at the time and place last appointed for sale. If the Property is sold, the Trustee shall deliver to the purchaser a deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recital in such deed of any matters of fact shall be conclusive proof of the truthfulness thereof.

Any person, including Borrower, the Trustee or Note Holder may purchase at such sale. After deducting all costs, fees and expenses of the Trustee, including costs of evidence of title in connection with such sale, the Trustee shall apply the remaining proceeds of sale first to payment of all sums expended under the terms of the Security Instrument not yet repaid, with accrued interest at the rate then payable under the Note or notes secured thereby, and then to payment of all other sums secured thereby (including the Note). If there be any proceeds remaining, the Trustee shall distribute them to the person or persons legally entitled thereto.

## 5. HAZARD OR PROPERTY INSURANCE.

Unless Note Holder and Borrower otherwise agree in writing, any insurance proceeds shall be applied first to reimburse Note Holder for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Note Holder's option, in such order and proportion as it may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by the Security Instrument, whether or not then due, and to such components thereof as Note Holder may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Note Holder. If Borrower abandons the Property, or does not answer within 30 days a notice from Note Holder that the insurance carrier has offered to settle a claim, then Note Holder may collect the insurance proceeds. Note Holder may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by the Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

If Borrower obtains earthquake insurance, and other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Note Holder, then (i) Borrower must ensure that such insurance names Note Holder as loss payee and (ii) such insurance shall be subject to this paragraph with respect to use of insurance proceeds.

Note Holder may charge a reasonable fee for the cost of determining whether the building or mobile home securing a loan is located in an area having special flood hazards, subject to applicable law.

## 6. BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE.

Borrower may repay the principal due under the Note at any time. A payment of principal only prior to the Maturity Date (beyond the principal included in the regular monthly payments) is known as a 'Prepayment.' When Borrower makes a Prepayment, Borrower must tell Note Holder in writing that Borrower is doing so. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly principal and interest payments due under the Note.

Borrower may make a full Prepayment or qualifying partial Prepayment(s) as long as Borrower pays a Prepayment charge equal to six (6) months' advance interest on any Prepayment(s) made in any twelve (12) month period in excess of twenty percent (20%) of the original principal amount of the Note, at the interest rate in effect under the Note as of the date of each Prepayment. There will be no Prepayment charge for Prepayment(s) made more than three (3) years after the date of the Note. If the Note is an Adjustable Rate Note, the fully indexed interest rate in effect under such Note (i.e. the margin plus the index as defined in such Note), as of the date of any such Prepayment, will be used to calculate the Prepayment charge, subject to any interest rate limit set forth in such Note and without regard to temporary interest rate reductions.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Rider.

_____(Seal)    _____(Seal)
DORIAN W GRAY     -Borrower                 -Borrower

_____(Seal)    _____(Seal)
                -Borrower                 -Borrower

_____(Seal)    _____(Seal)
                -Borrower                 -Borrower

_____(Seal)    _____(Seal)
                -Borrower                 -Borrower

Exhibit 2

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING
[AND WHEN RECORDED MAIL TO]
Nationwide Title Clearing
2100 Alt. 19 North
Palm Harbor, FL 34683

DSL#: 9042089649
Effective Date: 11/01/2006

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2006-0373756-00
Check Number
Tuesday, NOV 21, 2006 14:02:37
MIC    $1.00:MOD    $1.00:REC    $5.00
TCF    $0.00:DAF    $1.50:REF    $0.20
Ttl Pd    $9.00    Nbr-0003496335
                    mam/R3/1-1

CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION,
the sufficiency of which is hereby acknowledged, the undersigned, DOWNEY SAVINGS &
LOAN ASSOCIATION, F.A. ,A CALIFORNIA CORPORATION, WHOSE ADDRESS IS 3501 JAMBOREE
RD. 3RD FLOOR N. TOWER, NEWPORT BEACH, CA 92660, ASSIGNOR, by these presents does
convey, grant, sell, assign, transfer and set over the described Deed of Trust
together with the certain note(s) described therein, without recourse,
representation or warranty, together with all right, title and interest secured
thereby, all liens, and any rights due or to become due thereon to MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC. ,A DELAWARE CORPORATION, ITS SUCCESSORS OR
ASSIGNS, AS NOMINEE FOR CENTRAL MORTGAGE COMPANY, AN ARKANSAS CORPORATION, C/O P.O.
BOX 2026, FLINT, MI 48501-2026, (ASSIGNEE),
Said Deed made by DORIAN W. GRAY and recorded on 01/11/2006 as Inst#
2006-0010278-00 in Book   Page   in the office of the CONTRA COSTA  County
Recorder, CA.

Dated: 11/15/2006
DOWNEY SAVINGS & LOAN ASSOCIATION, F.A.

By:_____
    CRYSTAL MOORE    VICE PRESIDENT

STATE OF FLORIDA          COUNTY OF PINELLAS
On 11/15/2006 before me, MARY JO MCGOWAN (#DD0236404) , Notary Public, personally
appeared CRYSTAL MOORE , personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person whose name is subscribed to the within
instrument and acknowledged to me that he/she executed the same in his/her
authorized capacity, and that by his/her signature on the instrument the person, or
entity upon behalf of which the person acted, executed the same.
WITNESS MY hand and official seal

_____
MARY JO MCGOWAN (#DD0236404)    Notary Public

My Commission expires: 07/30/2007
Prep by: J. Lesinski/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

DSCMC 7311686
CJ1149634    MIN 100202690420896492 MERS PHONE 1-888-679-MERS

MARY JO MCGOWAN
Notary Public State of Florida
My Commission Exp. July 30, 2007
No. DD 0236404
Bonded through (800) 432-4254
Florida Notary Assn., Inc.

form5/FRMCA1

# Exhibit 3

[RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:]

**Trustee Corps**
**2112 Business Center Drive,**
**2nd floor**
**Irvine, CA 92612**

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2009-0072243-00
Check Number
Friday, APR 03, 2009 14:19:06
MOD    $2.00:REC    $6.00:FTC    $1.00
DAF    $2.70:REF    $0.30:RED    $1.00
Tt1 Pd    $13.00    Nbr-0000085883
                              rrc/R9/1-2

[ Space above this line for recorder's use only]

Trustee Sale No. CA0839793    Loan No. ▉▉▉▉▉    Title Order No. 914779

## IMPORTANT NOTICE
# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$24,267.18** as of **04/02/2009** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or Mortgage, the Beneficiary or Mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or Mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or Mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Beneficiary or Mortgagee may mutually agree in writing prior to the time the Notice of Trustee's Sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

Trustee Sale No. CA0839783 Loan No. ▓▓▓▓▓▓ Title Order No. 814779
**ATO CONTROL NO. 83253B1R7221**

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**CENTRAL MORTGAGE COMPANY D/B/A CENTRAL MORTGAGE LOAN SERVICING COMPANY**
**c/o TRUSTEE CORPS**
**2112 BUSINESS CENTER DRIVE**
**2ND FLOOR**
**IRVINE, CA 92612**
**(949) 252-8300**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** MTC FINANCIAL, INC. dba TRUSTEE CORPS is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 01/04/2006, executed by DORIAN W GRAY, A SINGLE MAN, as Trustor, to secure obligations in favor of DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A., as Beneficiary Recorded on 01/11/2006 as Document No. 2006-0010278-00 of official records in the Office of the Recorder of Contra Costa County, California, as more fully described on said Deed of Trust. Including a Note(s) for the sum of $636,910.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: **THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 12/01/2008 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, ALONG WITH LATE CHARGES, PLUS FORECLOSURE COSTS AND LEGAL FEES.**

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to TRUSTEE CORPS, said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

THE BENEFICIARY OR BENEFICIARY'S AUTHORIZED AGENT HAS COMPLIED WITH CIVIL CODE SECTION 2923.5 AND THE TRUSTEE HEREIN HAS EVIDENCE OF THE FORGOING IN ITS FILE.

DATED: 4/3/09

TRUSTEE CORPS, as Agent for CENTRAL MORTGAGE COMPANY D/B/A CENTRAL MORTGAGE LOAN SERVICING COMPANY
BY: North American Title Company, through SPL Inc, as authorized agent for
North American Title

*Frank Nall*

FRANK NALL - SPL. INC

TRUSTEE CORPS IS A DEBT
COLLECTOR. ANY INFORMATION
OBTAINED WILL BE USED FOR
THAT PURPOSE.

# END OF DOCUMENT

# Exhibit 4

[RECORDING REQUESTED BY
North American Title Company
c/o Trustee Corps

AND WHEN RECORDED MAIL TO:]

**CENTRAL MORTGAGE COMPANY**
**801 John Barrow Road,**
**Suite 1**
**Little Rock, AR 72205**



CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2009-0242251-00**
Check Number
Thursday, OCT 15, 2009 08:13:00
MOD    $2.00:REC    $6.00:FTC    $1.00
DAF    $2.70:REF    $0.30:RED    $1.00
Ttl Pd    $13.00    Nbr-0000283747
                    lrc/RZ/1-2

[Space above this line for recorder's use only]

Trustee Sale No. CA0839793    Loan No.█████████    Title Order No. 914779

MIN # 100202690420896492    PHONE # 888-679-6377

# ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to **CENTRAL MORTGAGE COMPANY D/B/A CENTRAL MORTGAGE LOAN SERVICING COMPANY** all beneficial interest under that certain Deed of Trust dated **01/04/2006**, executed by **DORIAN W GRAY, A SINGLE MAN**, as Trustor; to **DSL SERVICE COMPANY, A CALIFORNIA CORPORATION**, as Trustee; and **Recorded on 01/11/2006 as Document No. 2006-0010278-00** of official records in the Office of the County Recorder of **Contra Costa** County, **California**., real property described as follows:

**LOT 5, AS SHOWN ON THE MAP OF SUBDIVISION 8668 FILED AUGUST 11, 2004 IN MAP BOOK 467, PAGE 31, CONTRA COSTA COUNTY RECORDS.**
**EXCEPTING THEREFROM:**
**THE RIGHTS RESERVED IN THE DEED FROM BETHLEHEM STEEL CORPORATION TO PINOLE POINT STEEL COMPANY, RECORDED FEBRUARY 20, 1979 IN BOOK 9230, PAGE 459, OFFICIAL RECORDS, AS FOLLOWS:**
**"EXCEPTING AND RESERVING TO THE GRANTOR, ITS SUCCESSORS AND ASSIGNS, ALL OIL, ASPHALTUM, PETROLEUM, NATURAL GAS AND OTHER HYDROCARBON SUBSTANCES IN OR UNDER THE ABOVE-DESCRIBED LANDS AND BEING AT A VERTICAL DEPTH OF FIVE HUNDRED (500) OR MORE FEET BELOW THE PRESENT NATURAL SURFACE OF THE GROUND, BUT WITHOUT RIGHT OF ENTRY ON THE SURFACE OF THE ABOVE-DESCRIBED LANDS OR WITHIN FIVE HUNDRED (500) FEET BELOW SAID SURFACE."**

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust including the right to have reconveyed, in whole or in part, the real property described therein.

Trustee Sale No. CA0839793
Loan No. ▮▮▮▮▮
Title Order No. 914779

Dated: September 11, 2009

Beneficiary:

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: DORCAS TILLER, Assistant Secretary

STATE OF <u>ARKANSAS</u>
COUNTY OF SALINE

On September 11, 2009 before me, TERESA A. TABER, a notary public, personally appeared DORCAS TILLER who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ARKANSAS that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public in and for said County and State

END OF DOCUMENT

2

# Exhibit 5

[RECORDING REQUESTED BY

**North American Title Company**
**On Behalf of Trustee Corps.**

AND WHEN RECORDED MAIL TO:]

**Trustee Corps**
**30 Corporate Park, Suite 400**
**Irvine, CA 92606**

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2009-0242252-00
Check Number
Thursday, OCT 15, 2009 08:13:00
MOD     $2.00:REC     $6.00:FTC     $1.00
DAF     $2.70:REF     $0.30:RED     $1.00
Ttl Pd     $13.00
                        Nbr-0000283748
                        lrc/RZ/1-2

[Space above this line for recorder's use only]

Trustee Sale #: CA0839793          Loan #: ▉▉▉▉▉          Title Order#: 914779

# SUBSTITUTION OF TRUSTEE

WHEREAS, **DORIAN W GRAY, A SINGLE MAN**, was the original Trustor, **DSL SERVICE COMPANY, A CALIFORNIA CORPORATION**, was the original Trustee, **DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A.** was the original Lender and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., A SEPARATE CORPORATION, ACTING SOLELY AS NOMINEE FOR LENDER AND LENDER'S SUCCESSORS AND ASSIGNS**, was the original Beneficiary, under that certain Deed of Trust dated **01/04/2006, Recorded on 01/11/2006 as Document No. 2006-0010278-00** of official records in the office of the Recorder of **Contra Costa** County, California, and

WHEREAS, **CENTRAL MORTGAGE COMPANY D/B/A CENTRAL MORTGAGE LOAN SERVICING COMPANY** the undersigned, is the present Beneficiary under said Deed of Trust, and,

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place of and instead of said original Trustee or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

Now, THEREFORE, the undersigned Beneficiary hereby substitutes **MTC FINANCIAL INC. dba TRUSTEE CORPS, whose address is: 2112 BUSINESS CENTER DRIVE, 2ND FLOOR, IRVINE, CA 92612**, as Trustee under Said Deed of Trust.

Trustee Sale #: **CA0839793** Loan #: [redacted] Title Order#: **914779** Investor #:

DATED: APRIL 2, 2009

BENEFICIARY:
**CENTRAL MORTGAGE COMPANY D/B/A CENTRAL MORTGAGE LOAN SERVICING COMPANY**

*Janice Davis* (signature)

BY: JANICE DAVIS, Vice President

STATE OF   **ARKANSAS**
COUNTY OF  SALINE

On September 11, 2009 before me, TERESA A. TABER, a notary public, personally appeared <u>JANICE DAVIS</u> who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of <u>ARKANSAS</u> that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*Teresa A. Taber* (signature)

Notary Public in and for said County and State



**END OF DOCUMENT**

2

# Exhibit 6

NORTH-AMERICAN TITLE COM

[RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:]

**Trustee Corps**
**2112 Business Center Drive,**
**2nd floor – Suite 201**
**Irvine, CA 92612**

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC— 2009-0242253-00**

Check Number
Thursday, OCT 15, 2009 08:13:00
MOD     $3.00:REC     $7.00:FTC     $2.00
DRF     $2.70:REF     $0.30:RED     $1.00
Ttl Pd     $16.00          Nbr-0000283749
                              lrc/RZ/1-3

Trustee Sale # CA0839793  Loan#███████
[Space above this line for recorder's use only]
Order # 914779

# NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED **01/04/2006**. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On **11/04/2009** at **01:30PM**, **MTC FINANCIAL INC., dba TRUSTEE CORPS** as the duly appointed Substituted Trustee under and pursuant to Deed of Trust **Recorded on 01/11/2006 as Document No. 2006-0010278-00** of official records in the Office of the Recorder of **Contra Costa** County, **CALIFORNIA**, executed by, **DORIAN W GRAY, A SINGLE MAN**, as Trustor, **DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A.**, as Beneficiary,

WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United States, by cash a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state). AT: AT THE COURT STREET ENTRANCE TO THE COUNTY COURTHOUSE, 725 COURT ST.,(CORNER OF MAIN AND COURT STREET) MARTINEZ, CA

The property heretofore described is being sold "as is". All right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State describing the land therein: APN # 405-670-005-9

LOT 5, AS SHOWN ON THE MAP OF SUBDIVISION 8668 FILED AUGUST 11, 2004 IN MAP BOOK 467, PAGE 31, CONTRA COSTA COUNTY RECORDS.

EXCEPTING THEREFROM:

THE RIGHTS RESERVED IN THE DEED FROM BETHLEHEM STEEL CORPORATION TO PINOLE POINT STEEL COMPANY, RECORDED FEBRUARY 20, 1979 IN BOOK 9230, PAGE 459, OFFICIAL RECORDS, AS FOLLOWS:

"EXCEPTING AND RESERVING TO THE GRANTOR, ITS SUCCESSORS AND ASSIGNS, ALL OIL, ASPHALTUM, PETROLEUM, NATURAL GAS AND OTHER HYDROCARBON SUBSTANCES IN OR UNDER THE ABOVE-DESCRIBED LANDS AND BEING AT A VERTICAL DEPTH OF FIVE HUNDRED (500) OR MORE FEET BELOW THE PRESENT NATURAL SURFACE OF THE GROUND, BUT WITHOUT RIGHT OF ENTRY ON THE SURFACE OF THE ABOVE-DESCRIBED LANDS OR WITHIN FIVE HUNDRED (500) FEET BELOW SAID SURFACE."

The street address and other common designation, if any, of the real property described above is purported to be:

**5753 OAKMONT DRIVE, RICHMOND, CA 94806**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest thereon, as provided in said Note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Trustee's Sale is: **$725,766.41** (estimated amount). Accrued interest and additional advances, if any, will increase this figure prior to sale.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

Trustee Sale # CA0839793   Loan# [REDACTED]   Order # 914779

The Beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell.  The undersigned caused said Notice of Default and Election to Sell to be recorded in the County where the real property is located and more than three months have elapsed since such recordation.

**Compliance with California Civil Code Section 2923.52:  The Beneficiary or Beneficiary's agent has indicated that the requirements of California Civil Code Section 2923.52 have been met.  See Exhibit "A" attached hereto and made a part hereof.**

**Compliance with California Civil Code Section 2924.f:  Made a part hereof.**

1.  Pursuant to California Civil Code 2923.54 the undersigned, on behalf of the beneficiary, loan servicer or authorized agent, declares as follows:

     X Servicer does hereby state that Servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date of the notice of sale is filed.

2.  Timeframe for giving notice of sale specified in subdivision (a) Section 2923.52   ☐ Does  X Does not apply  pursuant to section 2923.52 or 2923.55

Dated: 10/15/2009

**MTC FINANCIAL INC. DBA TRUSTEE CORPS, as Successor Trustee**

By: ERNIE AGUILAR, TRUSTEE SALES OFFICER

**"TRUSTEE CORPS"**

2112 BUSINESS CENTER DRIVE, 2ND FLOOR, IRVINE, CA   92612

FOR SALE INFORMATION CONTACT: (714)573-1965, (714) 573-1965, (949) 252-8300

FOR REINSTATEMENT / PAY OFF REQUESTS CONTACT:  (949) 252-8300

**EXHIBIT "A"**

CA 0839793

**Declaration Per CA Civil Code Section 2923.5**

The undersigned officer or custodian of records for **Central Mortgage Company D/B/A Central Mortgage Loan Servicing Company** does hereby declare as follows:

That Servicer is the Beneficiary or acting as agent of the Beneficiary who is a party to a Deed of Trust securing certain real property commonly known as **5753 Oakmont Drive Richmond, CA 94806** located in **Contra Costa** County; said Deed of Trust secures a loan in made to **Dorian W Gray, A single Man** and is referenced by Loan Number 9042█89649

A. ☑ Servicer does hereby state that Servicer h,as contacted the Borrower to (1) assess the borrower's financial situation; (2) explore options with the Borrower to avoid foreclosure such as repayment plans, forbearance agreements and/or loan modifications; (3) inform Borrower of Borrower's right to a subsequent meeting to be scheduled within 14 days of said contact; and (4) provide Borrower with a toll-free number to a HUD certified counseling agency.

B. ☐ Servicer does hereby state that Servicer was unable to make contact with the Borrower but that the following efforts were made, to contact Borrower:

☐ Sent a First-Class letter to Borrower's last known mailing address advising Borrower (a) that Borrower is in default under the Loan, (b) that Borrower should contact Servicer regarding alternative options to avoid foreclosure, (c) of Servicer's toll-free number with access to a live representative during Servicer's business hours, (d) of a toll-free number to a HUD certified counseling agency, and (e) that Borrower's failure to contact Servicer may result in commencement of a foreclosure action;

☐ Attempted to contact Borrower by telephone at least 3 times at 3 different hours on 3 different days at the primary telephone number on file;

☐ Two weeks after number 2 above was completed and no contact having been made, Servicer sent a letter via Certified Mail Return Receipt Requested to Borrower's last known mailing address advising Borrower (a) that Borrower is in default under the Loan, (b) that Borrower should contact Servicer regarding alternative options to avoid foreclosure, (c) of Servicer's toll-free number with access to a live representative during Servicer's business hours, (d) of a toll-free number to a HUD certified counseling agency, and (e) that Borrower's failure to contact Servicer within 30 days of receipt of this letter will result in commencement of a foreclosure action.

☐ Other: Please attached a detailed statement of attempts made to contact the Borrower(s).

C. ☐ Servicer does hereby state that:

☐ Servicer has determined that the Borrower's primary telephone number and secondary telephone number on file, if any, have been disconnected

☐ No efforts were made to contact Borrower in that on _____ Borrower surrendered the property as evidenced by a letter confirming the surrender or by delivering the keys to the property to the Servicer or Servicer's agent.

☐ No efforts were made to contact Borrower in that Servicer has evidence in its file and reasonably believes that the Borrower has contacted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to Servicer.

☐ No efforts were made to contact Borrower in that Servicer has verified information that on or before the date of this declaration, the Borrower filed for bankruptcy and the proceedings have not been finalized.

This declaration is made for the purpose of inducing Old Republic Default Management Services to proceed with the filing of a Notice of Default and/or a Notice of Sale under a Deed of Trust in which the undersigned has an interest knowing that the Trustee will rely upon the truth and accuracy of the statements contained herein in commencing and handling such foreclosure action up to and including filing the Notice of Sale on the foreclosure.

I declare under penalty of perjury of the State of California that to the best of my knowledge the foregoing statements are true and correct. WITNESS my signature this 27th day of March, 2009.

By: _Natalie McClendon_

Natalie McClendon
Its: Foreclosure Lead

**END OF DOCUMENT**

# Exhibit 7

November 5, 2009

Attention Customer Service:
Central Mortgage Company
801 John Barrow, Suite 1
Little Rock, AR 72205

Subject: Loan Number ▓▓▓▓▓▓

This is a "qualified written request" under Section 6 of the Real Estate Settlement Procedures Act (RESPA) as well as a request under the Truth In Lending Act 15 U.S.C. section 1601.

This is a request for a complete copy of all documents signed in connection with the above referenced transaction.   This includes all names and contact information along with a description of the security sold, the assignment made, agreements signed, between all of the mortgage brokers, real estate brokers, developers, appraisers, mortgage aggregators, investment bankers, retail or other seller of securities and the investors who purchased the securities.

If you deny all or any part of this request, please cite each specific reason that justifies your denial of the information.

If you have any questions about processing this request, you may telephone me at

I understand that in accordance with Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), you are required to acknowledge my request within 20 business days and must try to resolve the issue within 60 business days.

Sincerely,

Dorian Gray
5753 Oakmont Drive
Richmond, CA 94806
(510) 918-7460

# Exhibit 8

December 4, 2009

Attention Customer Service:
Central Mortgage Company
801 John Barrow, Suite 1
Little Rock, AR 72205

Subject: Loan Number ▊▊▊▊▊▊

This is a "qualified written request" under Section 6 of the Real Estate Settlement Procedures Act (RESPA) as well as a request under the Truth In Lending Act 15 U.S.C. section 1601.

This is a request for a complete copy of all documents signed in connection with the above referenced transaction.   This includes all names and contact information along with a description of the security sold, the assignment made, agreements signed, between all of the mortgage brokers, real estate brokers, developers, appraisers, mortgage aggregators, investment bankers, retail or other seller of securities and the investors who purchased the securities.

If you deny all or any part of this request, please cite each specific reason that justifies your denial of the information.

If you have any questions about processing this request, you may telephone me at

I understand that in accordance with Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), you are required to acknowledge my request within 20 business days and must try to resolve the issue within 60 business days.

Sincerely,

Dorian Gray
5753 Oakmont Drive
Richmond, CA 94806
(510) 918-7460

# Exhibit 9

LAW OFFICES OF

# RAYMOND E. WILLIS
449 FIFTEENTH STREET, SUITE 201
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 451-1113
FAX: (510) 451-1472

Mailing Address:
POST OFFICE BOX 70214
OAKLAND, CALIFORNIA 94612

January 11, 2010

By Certified Mail/Return Receipt Requested
USPS Receipt No. 7009 0820 0000 3678 5847

U.S. Bancorp
U.S. Bancorp Center
600 Nicollet Mall
Minneapolis, MN 55402

USPS Receipt No. 7009 0820 0000 3678 5830

Central Mortgage Co.
    dba Central Mortgage Loan Servicing Co.
801 John Barrow, Ste. 1
Little Rock, AR 72205

*Re*: Borrower:    Dorian W. Gray
      Address:     5753 Oakmont Drive, Richmond, CA 94806
      Loan No.:

To Whom It May Concern:

        The undersigned represents Dorian W. Gray ("Client" or "Consumer") in con-
nection with the above-referenced loan transaction ("Subject Loan"), which was entered into
with Downey Savings and Loan on or about January 1, 2006. In the Subject Loan transaction,
Downey Savings and Loan took a security interest in Consumer's above-referenced property.
Downey Savings and Loan was sold to U.S. Bank, National Association and the loans of
Downey Savings and Loan were transferred to U.S. Bank, National Association.

        Please be advised we have been authorized by our Client to rescind the Subject
Loan transaction and hereby exercise that right pursuant to the Federal Truth in Lending Act, 15
U.S.C. § 1635, Regulation Z § 226.23. By this letter, Consumer rescinds the Subject Loan
transaction. In addition, the Consumer reserve all rights to raise additional or alternative
grounds for rescission under state or federal law.

        The Truth in Lending disclosure statement received by my client was defective in
a number of ways. As a result, our Client's right of rescission has been extended for three (3)
years from the date of the Subject Loan transaction. *See* 15 U.S.C. § 1635(f). One of these
material defects includes, without limitation, Consumer did not receive an accurate disclosure of
the amount financed, finance charge and annual percentage rate.

January 11, 2010
Page 2

   The security interest held by U.S. Bank, National Association is void upon mailing of this Notice. *See* 15 U.S.C. § 1635; Regulation Z § 226.23. Pursuant to Regulation Z, you have twenty (20) days after receipt of this Notice of Rescission to do the following: (1) desist from making any claims for finance charges in connection with the Subject Loan transaction; (2) return all money paid in connection with the Subject Loan transaction; and (3) satisfy all security interests, including mortgages, which were acquired in the Subject Loan transaction.

   Upon U.S. Bank, National Association's performance, we would like to discuss tender arrangements for the amount due (the amount financed less all loan charges and costs associated with the Subject Loan and all payments made to date). Accordingly, please provide this office with an itemization of the loan disbursements, the loan charges, the current principal balance, and all payments received from Consumer, our Client, so that we may determine the exact amount needed for tender.

   Any failure on U.S. Bank, National Association's part to take the actions described herein in a timely fashion may result in monetary liability under TILA.

       Very truly yours,

       /s/ RAYMOND E. WILLIS

       Raymond E. Willis

cc: Client